# ADDISON COUNTY.

## JANUARY TERM, 1878.

[CONTINUED FROM VOL. 50, PAGE 602.]

---

HARMON M. ALLEN AND WIFE *v.* R. T. HODGE AND A. C. HILL.

[IN CHANCERY.]

*Mortgage. Payment. Estoppel.*

R. executed a mortgage of land whereon was a building, to secure payment of his two promissory notes, payable one to H. and the other to H's wife, the latter of which was for money that belonged to the wife in her own right, and procured the building to be insured for a sum greater than the sum of the two notes, and assigned the policy to H. and wife as collateral security for the mortgage debt. The building was soon burned. Not long after that, but before the insurance was paid, A., knowing of the mortgage and that it was unpaid, bought of R. an undivided half of the premises. When the insurance was paid, it was not paid to H. and wife, but the money was used by R. in rebuilding. In proceedings by H. and wife to foreclose, A. testified that when he purchased, H. told him that when the insurance was paid, the mortgage would be paid, and that he afterwards told him the insurance was paid. *Held,* that the declarations of H. could not affect the wife's interest, nor devolve upon H. any duty to apply the money on the mortgage before he received it.

*Held,* also, that those declarations, if proved, being declarations of no existing state of things in faith of which A. acted, but at most a mere statement of what H. proposed to do, would not estop H. from asserting the mortgage.

APPEAL from the Court of Chancery.

It appeared from the bill, answer, and evidence, that on May 31, 1871, defendant Hodge executed to the orators a mortgage of certain premises in Bristol, consisting of a lot of land with a store building thereon, to secure payment of his two promissory notes of that date for $568.75 each, payable one to the orator Harmon M. Allen, and the other to his wife, the oratrix Angeline E., the latter of which notes was given for money belonging to the wife in her own right. Soon after the mortgage was executed,

Hodge procured the building to be insured for $2,000, and assigned the policy to the orators as collateral security for the mortgage debt. Not long after that the building was burned. After the building was burned, but before the insurance was paid, defendant Hill, knowing of said mortgage, and that it was unpaid, purchased of Hodge an undivided half of the premises. When the insurance was paid, the money was never actually paid to the orators, but was used by Hodge in rebuilding.

The bill, which alleged execution of the mortgage in the usual form, was brought against Hodge and Hill and numerous others who were alleged to have attached the property, to foreclose all equities. The answer of Hill admitted execution of the mortgage, but alleged that after he purchased, the orator Harmon told him the mortgage had been paid by the insurance, and that, relying on that representation, he paid the purchase-money and half of the expense of rebuilding. Hill testified that when he made the purchase Allen told him that when the insurance was paid the mortgage would be paid, and afterwards told him the insurance was paid ; but that was denied by both of the orators, and there was evidence tending to show that Hill knew that Hodge was using the avails of the insurance, and did not protest against it.

The case was heard at the December Term, 1877, and it was ordered by the court, PIERPOINT, Chancellor, that a decree be entered for the orators. Appeal by defendant Hill.

*F. E. Woodbridge,* for defendant Hill.

If, at the time of the purchase, Allen represented that the mortgage debt would be paid when the insurance was paid, and Hill acted on that assurance, the orators are estopped from setting up the mortgage, at least to the extent of Hill's interest. *Hackett* v. *Callender,* 32 Vt. 67 ; *Shaw* v. *Beebe,* 35 Vt. 204 ; *Turner* v. *Waldo,* 40 Vt. 51 ; *Pierce* v. *Andrews,* 6 Cush. 4 ; *Gray* v. *Bartlett,* 20 Pick. 193.

It appears that the insurance policy was assigned to the orators as collateral security for the payment of the mortgage debt. It follows that when the insurance money was received, the debt was paid *de facto,* whether the orators so applied it or not. Nor does

it make any difference whether the orators, or Hodge, or some other person, personally received the money, as the orators were the only persons who, by the assignment, could legally receive it. *Randall* v. *Rich,* 11 Mass. 494 ; *Hunt* v. *Nevens,* 15 Pick. 500.

*A. V. Spaulding* and *R. H. Mardin,* for the orators.

The answer and defendant's testimony are all the evidence there is on the part of the defendant. The answer is evidence only when it is responsive. But the answer admits the giving of the mortgage as alleged, and sets up matters in avoidance of it as to Hill. Those allegations are mere pleading, and if relied on must be made out by proof. If met and denied by the orators, they are not proved by the testimony of the defendant alone. The burden is on the defendant as to matter in avoidance. Thus, the statements of the orator, Harmon, that are relied on as an estoppel, cannot be found as established by the testimony. *Veile* v. *Blodgett,* 49 Vt. 270.

But if the orators said just what the defendant testifies to, it falls short of constituting an estoppel *in pais.* The elements of an estoppel *in pais* are, a representation or concealment of material facts, with knowledge of the facts by the party making them, ignorance on the part of the party to whom they are made of the truth of the matter, intention that the other party should act upon them, and action thereon thereby induced. Bigelow Estoppel, 480, *et seq ;* Herman Estoppel, 423 ; *Ripleys* v. *Billings,* 46 Vt. 542 ; *Shaw* v. *Beebe,* 35 Vt. 205 ; *Church* v. *Fairbrother,* 38 Vt. 33 ; *Hackett* v. *Callender,* 32 Vt. 97 ; *Wakefield* v. *Crossman,* 25 Vt, 298 ; *Langdon* v. *Doud,* 10 Allen, 433 ; *Wood* v. *Griffin,* 46 N. H. 230.

In any event the orator, Angeline, is not estopped by the conduct of her husband from having a decree against Hill.

The opinion of the court was delivered by

REDFIELD, J. The defendant Hill purchased one half the mortgaged premises while subject to the orators' mortgage. A short time before such purchase, the store upon said premises had been burned. At the time the store was destroyed there was an insur-

ance upon it, procured by defendant Hodge, for the benefit and security of the orators' mortgage, and to an amount sufficient to pay it. The insurance money was used by Hodge in rebuilding the store upon the same premises.

I. The defendant Hill testifies that Harmon M. Allen told him that said mortgage *would be paid* by the insurance money, and afterwards told him the insurance had been paid. And for this reason Hill insists that the orators are *estopped* from asserting their mortgage. The insurance money was not in fact paid to any one till after Hill had purchased, and this conversation, if effectual for any purpose, could not affect the female orator, who is the owner in her own right of one moiety of the mortgage. And we do not think that the facts claimed by the defendant Hill are proved by the proper measure of evidence. They rest substantially upon Hill's own evidence, and are alleged in avoidance of the rights claimed by the orators, and are not in any sense responsive to the bill. They are distinctly denied by both the orators; and the circumstances strongly impress the court that Hill must have been aware that Hodge was using the avails of the insurance, without protest or any question on his part. The insurance money was never actually paid to the orators; and, if it had been proved by satisfactory evidence that the orator Harmon M. Allen told defendant Hill that the mortgage *would* be paid by the insurance money, no duty attached to the orator to apply the money on his mortgage until he had received it.

II. But if the declarations of Allen were satisfactorily proved, we do not think that they would estop the orator H. M. Allen from asserting his mortgage. It is not claimed that he stated that his mortgage *had been* paid, or any existing state of things which were not true that induced Hill to purchase an interest in the premises. He stated merely what he purposed to do *in the future.* Lord DENMAN, in *Packard v. Sears,* 6 A. & E. 479, states the rule of law as to estoppels *in pais* very intelligibly, " that when one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him

to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a differing state of things as existing at that time." Allen, in this case, made no representations as to the existing state of things that were not true, hence, in asserting his mortgage, " he is not averring a different state of things as existing at that time." Hill knew that the orators' mortgage was existing and unpaid when he purchased, and subsisted while Hodge was rebuilding the store; and upon the evidence, had every reason to believe that the insurance money was being used in the construction of the building, in which, by his silence, he acquiesced. It would now be inequitable that the orators should be deprived of the benefit of their mortgage.

*Judgment affirmed, and cause remanded.*